May it please the court, Matt Adams with Northwest Immigrant Rights Project. I'm going to seek to preserve one minute for rebuttal. Very well. In denying the family's asylum applications, the agency made three fundamental errors that warrant reversal. First, it discounted harm in calculating whether the harm rose to the level of past persecution. Second, it found that the threats were insufficiently direct and vague to justify a well-founded fear of future harm. And third, as respondent concedes, the board erred in purporting to affirm a holding that the immigration judge never made. On the nexus issue? On the nexus issue. But first, with regard to whether the harm rose to a level of persecution, the agency errs in largely discounting the physical attack, the physical attack that left Mr. Espinoza with lasting injuries based on speculation. Speculation that it may have been a random attack and not performed by the gang. Now, the board cites to Matter of DR stating, quote, an immigration judge is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record, end quote. But that is precisely the problem. The record does not support the board's speculation that this may have been a random attack. In this regard, we cited to the Mashiri versus Ashcroft case, where again, this court noted that the agency erred in making an unsupported assumption that the home being ransacked in that case may have been a random criminal incident, ignoring the circumstantial evidence identifying who had perpetrated that harm. You know, one of the issue difficulties in this case, we have a single incident. So crediting that as being physically harmed, give it to the gangs, given some of the earlier testimony. In case after case, we've said that that usually is not enough to rise to the level. So do you have another case or is there something special about this case we should look at? I said it hasn't rose to enough is focusing on general violence or where there were no, for example, in the Sharma case that the board cited to there, they said the individual could point to no injuries. And in fact, individuals subsequently traveled abroad involuntary returned, and that individual's family continued to live without problems in that country. But even in Sharma, in a footnote, it nor it noted that physical violence is normally enough. And when you have that physical violence compounded with years of threats and stalking of the wife, you have direct threat to his child and ex-wife. You have the pastor being stopped and examined by armed men looking for him. That combination of factors demonstrates, again, past persecution. But it was not just that the agency made. Yes, please. The one thing the board seemed to focus on, though, is that, of course, he alleges it was four years of persecution, but he was able to go to work. Like so he said he stayed in his house, hid from the gang, but he was able to get out and go to work. That is correct. But as he noted, he worked in the fields, in the Milpa fields, and he would make calls ahead of time to find out if there were vehicles there monitoring it. And he also was unable to take jobs that exposed that provided greater exposure. And so he had more limited opportunities to work in that period because of that. And that's very similar to the case of Marcos from the Ninth Circuit, where the individual again over a period of years was facing threats and had to take precautions about where he entered and left work in the places he stayed at. But the court found that that, in fact, demonstrated a well-founded fear of persecution. But I would note one other significant error that the agency made here, and that was discounting the harm that he had suffered because of the isolation, because of the precautionary measures. The immigration judge specifically said that he would not, that he would not consider that harm in calculating the cumulative harm because he chose himself to enter into hiding, into isolation. But of course, at the same time, the immigration judge found that his fears were understandable. And so it's an error to say, yes, you have an understandable fear for your life. But on the other hand, I am not going to consider the harm that that fear caused in making you take these measures to secure your own safety. And we cited the cases like Akwesasne, where this court said that the agency can't expect an individual facing persecution to remain in hiding. What about the family members that also applied for asylum and and the court kind of just said they were the same set of facts? What is your position on that? So again, that was an error because, for example, his wife had demonstrated that she herself had been stalked and there have been threats levied against her saying if they weren't able to take care of the petitioner, that they were going to take care of her. And as to the child, the child was deprived of education. And there's case law from the Ninth Circuit that's saying harm from the perspective of a child is different than that as perceived by an adult because of their vulnerable state. So those are additional errors that the agency made in failing to evaluate the applications. It just basically considered them as derivative applications and not individual applications. And again, with respect to the finding that there is not future harm, it ignores this court's decision in Marcos. It's saying threats over years can, in fact, demonstrate future harm. But the immigration judge, and you see this on page 117 of the record, specifically said that, well, since they didn't carry out those threats, then it's more speculation. There's not really a basis to assume that they're going to go after you. And of course, this discounts that he was physically attacked, but also discounts what the Ninth Circuit has said time and again in Marcos and Aiden. It's not whether they've already killed you or one of your family members, but it's whether they have the will and the ability. And even the immigration judge acknowledged that the MS-13 does have the will and the ability to carry out these attacks. I think one of the things that the panel was concerned about, though, was that, for example, in the first instance, where we have a blue car with MS-13 and the weapon and the men, later, there's different cars parked 15 minutes here and there in front of the house. And that might be speculative that that's part of the gang. What is your answer to that? Well, again, this was in an isolated neighborhood, and that's why in the record they put in photos of where they live. They lived in a place that had two homes and a church across the street. So there's absolutely no reason to speculate that there could have been other cars randomly parked other than these men who are monitoring them or seeking to intimidate them. And in fact, the only other neighbor on that street had been directly approached by these armed men, telling them that they were going to kill Mr. Espinosa. And the church that was on that street, their pastor reported not only being stopped and inspected by armed men, but hearing from other members of the church that they had been informed by the gang members that, yes, Mr. Espinosa was targeted for death by these gang members. In addition, the board erred in failing to consider that even after they left, there continued to be inquiries about where Mr. Espinosa was, as the gang wanted to make sure as the country conditions records are in the evidence, the gang wanted to make sure that they laid a clear message to the community that they were in charge, that they were not going to tolerate individuals who would not collaborate with them. And if there are no further questions, I'll reserve my final minute. Very well. Thank you, Counsel. Good morning, Your Honors, and may it please the court. Stephanie Groff for the Attorney General. Your Honors, this case does ultimately turn on past persecution. And while the government acknowledges that what Mr. Espinosa and his family went through in El Salvador was concerning and rightfully so scary, what we have here is that he has not shown that the immigration judge's decision and the board's decision was unreasonable. Specifically, this court employs the substantial evidence standard of review when reviewing the past persecution finding. And what's important is whether the record compels a contrary conclusion. The Supreme Court in Ming Dai noted in looking at the substantial evidence standard review that it's the only question for this court is whether any reasonable adjudicator would conclude as the agency found. And that's really important. What we have here with Mr. Espinosa's experience, a reasonable adjudicator could find, as Mr. Espinosa claims, that he did experience past persecution, that it was enough. He did. He did discount the attack on Mr. Espinosa, right? So he came up to this conclusion that it could be anybody that was looking for him. And yet, when you look at those photos in the neighborhood, it's a very isolated area. And he did credit Mr. Espinosa's statements that he would not even go outside of his house to go to the bathroom at night, you know, because he would be afraid to be outside of his house. It was a rare moment that he actually left his house when he was attacked, right? Yes, Your Honor. And the government acknowledges that. And my friend on the other side notes that there's a lot of speculation on behalf of the immigration judge. However, it's important to note that while the immigration judge might not have agreed with Mr. Espinosa in his claim, that doesn't mean that it is speculation. Rather, a reasonable fact finder, as the immigration judge here, drew a different conclusion than that of what Mr. Espinosa's arguing. In terms of the rock-throwing, yes, the immigration judge noted that it was not clear that it was gangs. In fact, Mr. Espinosa testified himself that he didn't see who it was. It was late at night. He was going to a store. All he heard was, there he goes. But in the alternative, the immigration judge, in the same vein, stated, even assuming that this is the gang and looking at it cumulatively, it's not enough. And that same goes for, as my friend on the other side has a concern with, the isolation finding. The immigration judge did find that Mr. Espinosa self-isolated, that that is not harm because of the MS-13. And while that is true, and he did say that, and it may have gone a bit further as there is case law as it relates to religious persecution, that self-isolation and practicing and hiding is problematic, the immigration judge here made that alternative finding that said, even assuming that this self-isolation harm is because of MS-13, looking at the psychological harm, the economic harm by him not working as much, as you noted, he was able to go to work, he was able to go to church, looking at it all cumulatively, he still has not met the high burden of proof for past persecution. But he did credit the statements that the neighbor said that the MS-13 was looking to kill him, the pastor said that the MS-13 was looking to kill him, the employer at the agricultural job gave him less hours because MS-13, she was afraid, was going to come out to the work site. And then even his ex-partner had to move throughout El Salvador to escape the threats from the MS-13. And he did credit that this cars were in front of the house for over four years. So all of that doesn't seem like he was looking at past persecution, right? No, Your Honor, I respectfully disagree with your portrayal of it. And let me clarify a few things. So first, what we have here is in 2017, Mr. Espinoza was approached in this vehicle and asked to collaborate. There was no threat at that instant. From there, he did hear from... The man was standing, was in the front seat with a fully automatic weapon, right? Well, yes, but he, Mr. Espinoza stated that he does not want to get involved because of his family and was able to walk away. And this court's case law does show that, yes, well, that may be scary. That's not enough for past persecution. Then his neighbor heard from the gang members that they were asking about him, that they wanted to harm him. That's an indirect threat. It was not to him. His partner, sorry, his ex-partner, that is where there was a death threat. They did come up to her, asked about Mr. Espinoza, stated that they are going to kill him and her if they found out. That is true. The government and the immigration judge acknowledges that. But in terms of the pastor, my friend on the other side noted that the gang was looking for him. That's not what Mr. Espinoza's testimony stated. In fact, Mr. Espinoza stated that his pastor was driving around in the car with his family, I believe a van, and at one point gang members surveyed the van and left. While my friend on the other side notes that there was some evidence as it relates to what happened since Mr. Espinoza has left and that there were some threats. If you specifically look at that, the neighbor stated that someone was asking and she said, Well, only God can. The gang said only God can help him now. So to say that those are menacing, intense death threats rising to the level of past persecution or a well founded fear is a possible reasonable explanation. But that's not the standard. Just because it's reasonable doesn't mean this court can overturn it. It needs to be whether the record compels the contrary conclusion, and that is not what we have here. I also want to just acknowledge the separate applications of both the wife and the two Children. Importantly, the government and the immigration judge and board, everyone acknowledged that. In fact, the board specifically had a whole section. The immigration judge at the end had a section about the other applications, stating that all three of the petitioners are derivatives but have their own claims based on a family, P. S. G. And others. But the immigration judge noted that no other evidence was submitted with that. While the wife did create a declaration, it was similar, and it stated what Mr Espinoza went through. I'll also note that the Children were very young. There is no evidence there. So the immigration judge found, you know, it's petitioners burden that based on what we have here, it's really all based on Mr Espinoza's harm. And therefore, because he did not establish past persecution or a well they are not going to find that the derivatives on their own had risen to the level and have met their burden. I will note that there is case law as it relates to looking at minors on whether their harm rises to the level of past persecution and especially considering the fact that their Children. However, as I noted, it's petitioners burden. And in looking at the evidence, in fact, is the closing argument before the immigration judge. The only harm that his counsel noted as it relates to the Children was that the son when he's returned won't might not be able to go to school because they're afraid of the gangs. That's not enough to compel a contrary conclusion as it relates to the Children on their own, having established past persecution. Miss Croft. Yes, just shifting gears slightly, please. Would you address the nexus issue, which I understand that both government and um, counsel agree that the I. J. Didn't make such a finding, but B. I. A. Referred to as if they were finding what? What is the legal import of that? Yes, Your Honor. Happy to address that. So as we noted in our brief and my opposing counsel's mentioned, the government is not defending the nexus finding of the board, and that's specifically because the immigration judge did not make make a nexus nexus finding. Um, the legal import of that is yes, that is a error of the board. However, we argue that it is harmless error. In fact, this court recently in 2014 held in Gonzalez Lara v Garland, which was another immigration case that there the board aired as it related to voluntary departure, but found that it was harmless because I believe the non citizen didn't establish prima facie eligibility for something, and we would argue something similar here that it is harmless because if we were to remand back to the board to say, remove the nexus finding what we have is the dispositive past persecution finding a dispositive, well founded fear finding and even jumping ahead. If we were to go back, this is a quintessential gang threat case, which the government acknowledges is concerning to these countries are going through a lot. There is violence. We recognize that, but and the immigration judge and board recognize that. But it is not enough to compel a contrary conclusion. These air close call cases. And here we believe that cumulatively the immigration judge was correct and finding that it did not rise to level of past persecution, and he did not meet his burden of proof for well founded fear. And thank you so much. Sorry for the last minute substitution. That's all right. Appreciate you making the trip. Thank you. Thank you.  Thank you. If I may quickly, um, responded asserts that even if the immigration judge erred in not taking into account the harm from the isolation from safety measures that the immigration judge in the alternative found that that harm was insufficient and weighing cumulative harm. That's correct. If you look at the immigration judge's decision on page 114, he states, quote, The court does not consider the response period time of isolation is part of the cumulative harm. There's no alternative finding there so that that is was simply discounted. In addition, respond, argues. Well, in order to find that the record compels a finding, you need to show that a reasonable adjudicator could have not come up with this alternative. But again, a reasonable adjudicator has to make their assumptions based on the record. It can't be speculation. Respondent speculates that they could have been playing a game saying they're gonna throw the rock at the next individual. And there there he goes. The next individual. That's just rank speculation. There's no justification in the record, especially where the MS 13 exercise exclusive control, a purporting to uphold the finding that the immigration judge didn't make. You have error upon error that stacked in this case, and there's no way to divvy these out and say, Well, there might have been some basis for a reasonable adjudicator to find that he had not faced past persecution, that there was not a well founded fear. In the end, it's based on speculation and cannot stand. Thank you. Thank you, Counsel. Thanks to both of you for your briefing and argument. In this case, this matter is submitted, and we'll go ahead and call the next one.
judges: McKEOWN, OWENS, Kendall